IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02286-PAB-SKC

ZVELO, INC.,

        Plaintiff,

v.

CHECK POINT SOFTWARE TECHNOLOGIES, LTD.,

        Defendant.

---

**DEFENDANT CHECK POINT SOFTWARE TECHNOLOGIES, LTD.'S
MOTION TO DISMISS**

---

Pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Check Point Software Technologies, Ltd. ("Check Point") moves to dismiss the Complaint of Plaintiff zvelo, Inc. ("zvelo"), and in support thereof states as follows:

## I.      PRELIMINARY STATEMENT

zvelo alleges that Check Point has misappropriated alleged trade secrets related to zvelo's database of categorized URLs. But this Court does not have personal jurisdiction over Check Point and, even if it did, zvelo has failed to state an actionable claim for trade secret misappropriation, unjust enrichment, or injunctive relief. For these reasons, and as explained in greater detail below, zvelo's Complaint should be dismissed for lack of personal jurisdiction under Rule 12(b)(2) and failure to state a claim under Rule 12(b)(6).

## II.      CERTIFICATION OF CONFERRAL

Pursuant to Practice Standard III.F.2, counsel for Check Point certifies that on February

6, 2019, they conferred with zvelo's counsel about this Motion, and zvelo opposes the Motion.

### III.    STATEMENT OF FACTS

Check Point is an Israeli provider of software products for information technology security whose headquarters and principal place of business are in Tel Aviv, Israel.  Declaration of Tamir Zegman in Support of Check Point's Motion to Dismiss ("Zegman Decl.") at ¶ 2. Check Point is incorporated under the laws of the State of Israel, and its principal executive offices and research and development facilities are located in Israel.  *Id.* at ¶ 3.  Check Point offers customers a variety of products and services, including its URL Filtering Software Blade. *Id.* at ¶ 5.  That product, among many other things, provides customers optimized web security. *Id.*  Check Point's software, including its URL Filtering Software Blade, was developed and is maintained in Israel.  *Id.* at ¶ 6.  While Check Point sells its products worldwide, it has minimal contacts with the United States.  *Id.* at ¶ 3.

Check Point's wholly-owned U.S. subsidiary, Check Point Software Technologies, Inc. ("Check Point US"), is incorporated in Delaware and has a principal place of business in California.  *Id.* at ¶ 4.  Historically, Check Point US has acted as the U.S. distributor of Check Point products and services, including Check Point's URL Filtering Software Blade.  *Id.*  Check Point, an Israeli company, not Check Point US, is the only named defendant in this litigation.

### IV.    ARGUMENTS & AUTHORITIES

#### A.    This Court Lacks Personal Jurisdiction Over Check Point.

A plaintiff bears the burden of establishing personal jurisdiction.  *See, e.g.*, *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).  If a district court rules on a motion to dismiss for lack of personal jurisdiction based on the complaint and declarations,

the plaintiff must make a *prima facie* showing of personal jurisdiction. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). A *prima facie* showing must be supported by well-pled factual allegations; vague, conclusory, and speculative allegations will not suffice. *See, e.g.*, *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987) (citing *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976)); *Fairbrother v. Am. Monument Found., LLC*, 340 F. Supp. 2d 1147, 1154 (D. Colo. 2004); *Tripoli Mgmt., LLC v. Waste Connections of Kansas, Inc.*, 09CV01767-CMA-KLM, 2010 WL 845927, at *2 (D. Colo. Mar. 9, 2010). Even well-pled allegations in the complaint will not support the exercise of personal jurisdiction if controverted in an affidavit submitted by the defendant. *See, e.g.*, *Fairbrother*, 340 F. Supp. 2d at 1154. In the event the district court elects to conduct an evidentiary hearing, the plaintiff must establish personal jurisdiction by a preponderance of the evidence. *See Dennis Garber & Associates, Inc. v. Pack-Tech Intern. Corp.*, 115 F.3d 767, 773 (10th Cir. 1997).

Here, the personal jurisdiction analysis hinges on whether Check Point, an Israeli company with headquarters in Tel Aviv, has sufficient "minimum contacts" with Colorado such that the exercise of personal jurisdiction would comport with due process. *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017); *cf. GCIU-Employer Ret. Fund v. Coleridge Fine Arts*, 700 Fed. App'x 865, 869 (10th Cir. 2017) (recognizing that nonresident corporation's affiliation with company that has minimum contacts with the forum is not sufficient to establish that the nonresident corporation itself has the requisite minimum contacts with the forum).[1] An out-of-state defendant's contacts with a forum state can give rise to

---

[1] In deciding personal jurisdiction, a district court must address: (i) whether any statute authorizes the service of process on the defendant; and (ii) whether the exercise of such jurisdiction comports with constitutional due process demands. *See Trujillo v. Williams*, 465

general, all-purpose jurisdiction or specific, case-linked jurisdiction.  *See Old Republic*, 877 F.3d at 903; *Intercon*, 205 F.3d at 1247.  Here, zvelo's Complaint is devoid of allegations that could give rise to personal jurisdiction, general or specific, over Check Point.

### 1.    General personal jurisdiction is lacking.

General jurisdiction only exists over a nonresident corporation, like Check Point, where its connections with the state are so "continuous and systematic" so as to render the defendant "at home" in the forum state.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).  That assessment "calls for an appraisal of a corporation's activities in the entirety, nationwide and worldwide." *Id.* at 762, n.20.  Importantly, "[a] corporation that operates in many places can scarcely be deemed at home in all of them.  Otherwise, 'at home' would be synonymous with 'doing business' . . . ." *Id.*; *see also Am. Fid. Assur. Co. v. Bank of New York Mellon*, 810 F.3d 1234, 1242 (10th Cir. 2016).

Here, Check Point is incorporated and headquartered in Israel.  Zegman Decl. at ¶ 2.  The Check Point software at issue in this case—Check Point's URL Filtering Software Blade—was developed by Check Point employees in Israel.  *Id.* at ¶ 6.  Sales of this software to end-users in the United States are made by third-party resellers or distributors, not by Check Point.  *Id.* Taking the entirety of Check Point's operations into account, Check Point is indisputably not "at home" in Colorado.  *See, e.g.*, *Daimler*, 134 S. Ct. at 762, n.20.  For that reason, general

---

F.3d 1210, 1217 (10th Cir. 2006).  None of the statutes giving rise to zvelo's claims authorize nationwide service of process.  Thus, pursuant to Rule 4(k)(1)(A), this Court must look to Colorado law to determine whether Check Point "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  Colorado's long-arm statute confers jurisdiction to the maximum extent allowed by the Due Process Clause.  *Archangel Diamond Corp. v. OAO Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005); Colo. Rev. Stat. § 13-1-124. As a result, "the first, statutory inquiry effectively collapses into the second, constitutional[] analysis."  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

jurisdiction is lacking. *See, e.g.*, *www.Turnstiles.us, Inc. v. Modular Sec. Sys., Inc.*, 15-CV-1806-RM-MEH, 2016 WL 9735764, at *5 (D. Colo. June 28, 2016) (allegations of "advertising," "sales," and "installations," among other things, in Colorado is "evidently inadequate" to establish general personal jurisdiction); *Morrow v. Calico Res. Corp.*, 14-CV-03348-MEH, 2015 WL 535342, at *4 (D. Colo. Feb. 9, 2015) (recognizing that "conducting business from an office in Colorado is insufficient" to establish general personal jurisdiction over a defendant).

### 2. Specific personal jurisdiction is lacking.

To establish the requisite "minimum contacts" that give rise to specific personal jurisdiction over an out-of-state defendant, a plaintiff must show that: (i) the defendant "purposefully directed" actions toward the forum state; and (ii) the plaintiff's injuries "arise out of" the defendant's forum-related contacts. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008). Even then, a district court must still consider whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice. *See, e.g.*, *Dagen v. Book*, 249 F.R.D. 362, 366 (D. Colo. 2008) (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)). The allegations in zvelo's Complaint are insufficient to make even a *prima facie* showing of specific personal jurisdiction.

#### (a) Check Point did not purposefully direct any tortious conduct towards Colorado.

To show that a defendant purposefully directed tortious conduct towards a forum, the plaintiff must establish that: (i) the defendant committed an "intentional" act (ii) that was "expressly aimed at the forum state" (iii) "with knowledge that the brunt of the injury would be felt in the forum state." *Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. App'x 86, 96 (10th Cir. 2012) (quoting *Dudnikov*, 514 F.3d at 1072). The Tenth Circuit has recognized that a defendant

5

expressly aims its actions toward a forum only if that forum is the "focal point" of the tort and the resulting harm. *See, e.g.*, *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1080 (10th Cir. 1995); *Dudnikov*, 514 F.3d at 1075, n.9.  "It is not enough that a plaintiff is a resident of the forum and suffered harm there." *Int'l Ass'n of Certified Home Inspectors v. Lesh*, 18-CV-0454-WJM-SKC, 2018 WL 6249908, at *4 (D. Colo. Nov. 29, 2018).

zvelo's Complaint contains no well-pled allegations of tortious conduct by Check Point, much less any well-pled allegations that Check Point expressly aimed tortious conduct at Colorado.  Rather, in its Complaint, zvelo alleges that it has formed a "reasonable belief" from publicly available information that Check Point's "products and services . . . utilize" zvelo's URL database.  *See* Dkt. 1 at ¶ 42.  Notably, zvelo does not identify what facts give rise to its so-called "reasonable belief."  From this threadbare allegation, zvelo next surmises that Check Point "improperly acquired, used, and/or disclosed" zvelo's trade secrets, although it provides no explanation or detail as to how Check Point did so.  *Id.* at ¶ 53.  zvelo adds that "[m]any of the activities regarding misappropriation and dissemination of trade secrets and highly confidential information occurred or are occurring in this judicial district," but again does not identify what specific "activities" allegedly occurred or are occurring in Colorado.  *Id.* at ¶ 4.  Indeed, the only reference to Colorado in the Complaint is the statement that zvelo resides there.  *Id.* at ¶ 1.

In short, all of the jurisdictional allegations in the Complaint are vague, conclusory, and speculative, and therefore cannot serve as a basis for showing that Check Point purposefully directed tortious conduct towards Colorado.  *See, e.g.*, *Ten Mile Indus. Park*, 810 F.2d at 1524; *Fairbrother*, 340 F. Supp. 2d at 1154; *Fox v. California Franchise Tax Bd.*, 08-CV-01047-PAB-

BNB, 2009 WL 3162519, at *2-3 (D. Colo. Sept. 30, 2009).  For this reason, specific personal jurisdiction is lacking.

> **(b)      zvelo's claimed damages do not arise from any of Check Point's alleged Colorado contacts.**

In addition to showing that a defendant purposefully directed tortious conduct at a forum, the plaintiff must show that its injuries "arise out of" that tortious conduct to establish specific personal jurisdiction.  *See, e.g.*, *Dudnikov*, 514 F.3d at 1071.  A claim does not "arise out of" a defendant's forum-related contacts if the plaintiff would have suffered the same injury absent the defendant's contacts with the forum. *See, e.g.*, *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456-57 (10th Cir. 1996) (citing *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267 (9th Cir. 1995)); *Heffington v. Puleo*, --- Fed. App'x ---, 18-3034, 2018 WL 4944402, at *3 (10th Cir. Oct. 12, 2018).  Here, zvelo does not even allege that its injuries arise out of conduct tied to Check Point's alleged Colorado contacts.  For that additional, independent reason, zvelo has not established that this Court has specific personal jurisdiction over Check Point.

> **B.      zvelo Has Failed To State A Claim For Relief.**

Even if the court determines that it has personal jurisdiction over Check Point, it should dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973, 167 L. Ed. 2d 929 (2007)).  "A plaintiff meets this standard when it 'pleads factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged.'" *Gulf Coast Hotel-Motel Ass'n v. Mississippi Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 504 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 677).

The Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *RE/MAX, LLC v. Quicken Loans, Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (internal quotation omitted). "At the same time, however, a court need not accept conclusory allegations." *Id.* (internal citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," including "legal conclusion[s] couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, a claim should be dismissed where well-pleaded facts fail to warrant an inference that a claim is plausible and not merely possible. *Id.* at 678–79. One way in which the Court might conduct its analysis is to identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and disregard them. *Ciena Commc'ns, Inc. v. Nachazel*, No. 09-CV-02845-MSK-MJW, 2010 WL 3489915, at *2 (D. Colo. Aug. 31, 2010) (citing *Iqbal*, 556 U.S. at 678). Then, faced with only well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### 1.    Plaintiff has failed to allege misappropriation of trade secrets under the Defend Trade Secrets Act or the Colorado Uniform Trade Secrets Act.

zvelo has asserted trade secret claims under 18 U.S.C. § 1836, et seq. ("DTSA") and Colo. Rev. Stat. § 7-74-101, et seq. ("CUTSA"). zvelo has not adequately pled either of its trade secret claims. To state a claim for misappropriation of trade secrets under either DTSA or

CUTSA, a plaintiff must allege that: (1) it possessed a valid trade secret; (2) the trade secret was disclosed or used without consent; and (3) defendant knew, or should have known, that the trade secret was acquired by improper means.[2]  *RE/MAX*, 295 F. Supp. 3d at 1173; 18 U.S.C. § 1839(5)(A).  zvelo's trade secret claims are deficient with respect to each of these elements.

**(a)     Element One: the facts alleged by zvelo do not support a plausible claim that it possessed relevant trade secrets.**

In its Complaint, zvelo has failed to allege with sufficient specificity what allegedly misappropriated information constitutes a valid trade secret.[3]  A trade secret must be comprised

---

[2] DTSA and CUTSA define misappropriation as the:
  (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
  (b) Disclosure or use of a trade secret of another without express or implied consent by a person who:
    (I) Used improper means to acquire knowledge of the trade secret; or
    (II) At the time of disclosure or use, knew or had reason to know that such person's knowledge of the trade secret was:
      (A) Derived from or through a person who had utilized improper means to acquire it;
      (B) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
      (C) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
    (III) Before a material change of such person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

[3] DTSA defines a trade secret as, "financial, business, scientific, technical, economic, or engineering information" that "derives independent economic value, actual or potential, from not being generally known to, and *not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information*." 18 U.S.C. § 1839(3)(B) (emphasis added).  CUTSA similarly defines a trade secret as, "information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, or list of actual or potential customers or suppliers, that: (A) derives independent economic value, actual or potential, from not being generally known to, *and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use*; and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Colo. Rev. Stat. § 7-74-102(4) (emphasis added).

of information that is not generally known and not readily ascertainable by proper means. *See* 18 U.S.C. § 1836, et seq.; Colo. Rev. Stat. § 7-74-101, et seq. "Generally known or readily ascertainable" is a defendant-specific standard based on a defendant's own knowledge and experience. *See Microbiological Res. Corp. v. Muna*, 625 P.2d 690, 697-99 (Utah 1981) (recognizing that information published and commonly known in the trade is not a trade secret); *Utah Med. Prods., Inc. v. Clinical Innovations Assocs., Inc*., 79 F. Supp. 2d 1290, 1312-13 (D. Utah 1999), *aff'd*, 251 F.3d 171 (Fed. Cir. 2000).

In support of its misappropriation claims, zvelo alleges that Check Point misappropriated information related to zvelo's proprietary database, "including but not limited to the lexicon of categories developed by zvelo and the billions of URLs categorized by zvelo." Dkt. 1 at ¶¶ 53, 65. If zvelo's claim is that the URLs (*i.e*., the website addresses) in the zvelo database are trade secrets, zvelo has failed to allege facts sufficient to establish that URLs, which are available to anyone with internet access, are zvelo's trade secret.

If zvelo's claim is that the categories used in the database are its trade secrets, it has likewise failed to allege facts sufficient to support that claim. zvelo makes the conclusory allegation that it has a "unique and proprietary taxonomy of hundreds of categories" for URLs. *Id.* at ¶ 15. However, the only specific factual allegation zvelo makes in this respect is that "categories can range from 'news' to 'pornography' to 'malicious software.'" *Id.* at ¶ 8. The subject matter of public websites—for instance the fact that www.cnn.com is a news website—is readily ascertainable. Even zvelo's categorization of every URL in its database is publicly available through a look-up tool on its website. *See* https://tools.zvelo.com/#!/check-a-url.

zvelo's Complaint alleges no facts to support a claim that this publicly available and readily ascertainable information is nonetheless a trade secret.

zvelo also contends it possesses proprietary processes for determining which websites are active on a daily basis (Dkt. 1 at ¶ 14), and proprietary systems for classifying content and malicious detection (*Id.* at ¶ 16). However, zvelo does not contend that Check Point has used or disclosed any of these processes. Instead, zvelo alleges only that Check Point is using some unspecified portion of the URLs or categories that zvelo includes in its database. *See id.* ¶¶ 53, 54, 65, 66.

zvelo has failed to allege sufficiently specific facts to support a claim that its publicly-available and readily ascertainable categorization of URLs is a trade secret. Accordingly, it has failed to state a claim for trade secret misappropriation under either DTSA or CUTSA.

> **(b)    Element Two: the facts alleged by zvelo do not support a plausible claim that Check Point used zvelo's alleged trade secrets.**

zvelo's only allegation relating to Check Point's alleged use or disclosure of information from zvelo's database is the statement that zvelo has formed a "reasonable belief that Check Point's products and services that provide URL filtering functionality utilize the zvelo [database]." Dkt. 1 at ¶ 42. zvelo does not indicate how it formed this "belief." zvelo does not describe any evidence to support its belief. It does not state how Check Point allegedly acquired zvelo's information or when Check Point allegedly started using it. Nor does zvelo identify any specific zvelo URLs or categories it believes Check Point is using. zvelo does not even explain whether it contends that Check Point is using all of zvelo's database, or just some portion of the database. zvelo's conclusory statement regarding Check Point's alleged use of zvelo's "URL

filtering functionality" is a quintessential example of a legal conclusion couched as a factual allegation and it is not sufficient to state a claim. *See Ciena Commc'ns, Inc.,* 2010 WL 3489915, at *2 (finding that plaintiff's conclusory allegation of use did not support a trade secret misappropriation claim and granting defendant's motion to dismiss); *see also Edifecs Inc. v. TIBCO Software Inc.,* 756 F. Supp. 2d 1313, 1320–21 (W.D. Wash. 2010) (dismissing trade secret claim as too speculative where plaintiff pled that several of its former employees were employed by defendant, but alleged no specific facts to suggest that employees were using trade secrets in a way that amounted to misappropriation).

      **(c)**        **Element Three: zvelo fails to allege improper acquisition.**

Not only has zvelo failed to allege any facts to support its claim that Check Point used its alleged trade secrets, it also has not alleged facts sufficient to support a conclusion that Check Point improperly acquired zvelo URL categorization information.  For example, zvelo does not allege that any particular individual or group of individuals disclosed to Check Point zvelo's alleged trade secrets.  Nor does zvelo allege that Check Point wrongly contracted with another entity to obtain zvelo's alleged trade secrets.

Indeed, not only is zvelo's Complaint devoid of any specific allegation that Check Point improperly acquired zvelo's alleged trade secrets, zvelo suggests in its Complaint that companies such as Check Point may validly be using information from the zvelo database, even if zvelo is unaware of such use.  Thus, while zvelo asserts that *it* did not directly give Check Point permission to use its database (Dkt. 1 at ¶¶ 44-46), zvelo also acknowledges that none of its licensees have reported to zvelo whether they have provided products or services to Check Point which rely on zvelo's database.  *Id.* at ¶ 47.  Furthermore, zvelo admits that its database is

"incorporated into offerings from many of the leading network security and web filtering vendors for domain name systems" (*Id.* at ¶ 12), and that its standard license agreement permits its customers to re-license its database as a part of one of those products (*Id.* at ¶ 39). zvelo also states that its licensees "generally" provide zvelo with a list of the companies to whom the licensees are selling their zvelo-based products or services, implying that its licensees do sometimes sell zvelo-based products or services to companies without reporting it to zvelo. (*Id.* at ¶ 40).

Accordingly, even taking all of zvelo's allegations as true—including its unsupported and conclusory allegations about use—zvelo implicitly concedes that Check Point and any other third-party could have legitimately acquired zvelo information from any one of "many" different network security and web filtering vendors authorized to re-license the zvelo database as a part of their products or services. *Id.* at ¶ 12. Because zvelo's allegations are completely compatible with proper conduct by Check Point, zvelo has failed to state a plausible claim that Check Point improperly acquired the alleged trade secrets. *See Ciena Commc'ns, Inc.*, 2010 WL 3489915, at *2, n.2 (citing *Twombly*, 550 U.S. at 567) (noting plaintiff in *Twombly* failed to state plausible claim where plaintiff pled that two defendants had engaged in parallel conduct that *might* be consistent with the required element of an agreement between the two defendants, and "'was not only compatible with, but indeed was more likely explained by, lawful unchoreographed free-market behavior.'").

### 2. zvelo Has Failed To State A Claim For Unjust Enrichment.

Plaintiff's third claim for relief—unjust enrichment—is preempted by CUTSA and is therefore barred as a matter of law. On its own terms, CUTSA "displaces conflicting tort,

restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret," but "does not affect: (a) contractual remedies . . . (b) other civil remedies that are not based upon misappropriation of a trade secret; or (c) criminal remedies . . . ." Colo. Rev. Stat. § 7-74-108. CUTSA's preemption provision bars claims that "are no more than a restatement of the same operative facts which would plainly and exclusively spell out only trade secret misappropriation." *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996).

Here, both zvelo's claim for unjust enrichment and its claim for misappropriation of trade secrets relate to zvelo's intellectual property, its alleged "proprietary database of categorized URLs." *See* Dkt. 1 at ¶¶ 12, 53, 65, 76. There is no allegation that Check Point was unjustly enriched by any tangible property. As a result, zvelo's unjust enrichment claim is preempted under CUTSA.

### 3.     Injunctive Relief Is Not A Claim For Relief.

Plaintiff's fourth claim is for injunctive relief. An injunction is an equitable *remedy* which must be based on an underlying cause of action—not a standalone cause of action. *See, e.g. Gates v. Sprint Spectrum*, 523 F.Supp.2d 1287, 1291 (D. Kan. 2007) (dismissing "claim" for injunctive relief pled as separate claim from underlying action for tort of trespass, on ground that an injunction is a remedy not an independent cause of action); *Booth v. Quantum3D, Inc.*, C-04-5376 EMC, 2005 WL 1512138 at *4 (N.D. Cal., June 15, 2005) (dismissing "claim" for injunctive relief because injunctive relief is a remedy, not a cause of action). Plaintiff's claim for injunctive relief should be dismissed because it is not an independent cause of action. In addition, Plaintiff's conclusory statements that it "has sustained irreparable injury" (Dkt. 1 at ¶ 83) and that it is "left without an adequate remedy at law because, among other things, the

damage to existing and prospective consumer relationships cannot be determined as a matter of law" (*Id.* at ¶ 84), do not include any supporting factual basis and are therefore insufficient to support any claim for relief.

**V.      CONCLUSION & REQUEST FOR RELIEF**

For the foregoing reasons, Check Point respectfully requests that this Court GRANT Check Point's Motion and DISMISS zvelo's Complaint for lack of personal jurisdiction and failure to state a claim.  Further, pursuant to and consistent with C.R.S. § 13-17-201, Check Point respectfully requests an award of reasonable attorneys' fees and all other relief to which it may be legally entitled.

Date:  February 8, 2019

**WHEELER TRIGG O'DONNELL LLP**


Kathryn A. Reilly
Melissa L. Romero
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202-5647
T:  303.244.1800
F:  303.244.1879
reilly@wtotrial.com
romero@wtotrial.com

Respectfully submitted,

**DLA PIPER LLP (US)**


By: /s/ Michael Strapp
Michael Strapp
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
T:  617.406.6000
F:  617.406.6147
michael.strapp@dlapiper.com

Allissa A.R. Pollard
Christopher B. Donovan
1000 Louisiana Street, Suite 2800
Houston, Texas 77002-5005
T:  713.425.8400
F:  713.425.8401
allissa.pollard@dlapiper.com
christopher.b.donovan@dlapiper.com

 **COUNSEL FOR DEFENDANT CHECK
POINT SOFTWARE TECHNOLOGIES,
LTD.**

## **CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on February 8, 2019, I electronically filed the foregoing

DEFENDANT CHECK POINT SOFTWARE TECHNOLOGIES, LTD.'S MOTION TO

DISMISS with the Clerk of Court using the CM/ECF system which will send notification of such

filing to all attorneys of record.

*/s/* Michael Strapp
Michael Strapp