**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-02286-PAB-SKC

ZVELO, INC.,

      Plaintiff,

v.

CHECK POINT SOFTWARE TECHNOLOGIES, LTD.,

      Defendant.

_____

**PLAINTIFF'S RESPONSE IN OPPOSITION TO CHECK POINT SOFTWARE**
**TECHNOLOGIES, LTD.'S MOTION FOR ATTORNEYS' FEES**
_____

Plaintiff zvelo, Inc. ("zvelo"), by and through its undersigned counsel, respectfully submits this Response in Opposition to Defendant Check Point Software Technologies, Ltd.'s ("Check Point") Motion for Attorneys' Fees (the "Motion") [Dkt. 58].

## I.      INTRODUCTION.

In moving for attorney fees under C.R.S. § 13-17-201, Check Point has assumed, without any substantive law or analysis, that zvelo's statutory claims for relief constitute torts for purposes of C.R.S. § 13-17-201.  Under the standard previously adopted by this Court, C.R.S. § 13-17-201 does not apply.  Further, even were the statute to apply to this action, Check Point fails in the Motion to discharge its burden of demonstrating that the fees it is seeking to recover are reasonable.  Accordingly, the Motion must be denied.

First, C.R.S. § 13-17-201 only applies, at most, to tort actions dismissed under Colorado Rules of Civil Procedure 12(b) or its federal equivalent.  Rather than provide any legal or analytical

support for its position, Check Point's entire demand for the extraordinary relief it seeks is predicated solely on Check Point's unsubstantiated *assertion* that zvelo's claims constitute torts. Unfortunately for Check Point, the Court is not required merely to take Check Point's *word* that zvelo's claims constitute torts for purposes of C.R.S. § 13-17-201.  The Colorado courts have developed an analytical framework for purposes of evaluating whether zvelo's statutory claims for trade secret misappropriation constitute torts.  Applying that case law to zvelo's claims for trade secret misappropriation leads to the unequivocal conclusion that the claims are not considered torts for purposes of C.R.S. § 13-17-201.  Similarly, Colorado courts have previously decided that unjust enrichment is not a tort for purposes of C.R.S. § 13-17-201.  Accordingly, Check Point is not entitled to recover its fees and the Motion must be denied.

Second, even were the Court to accept Check Point's unsupported argument that it is entitled to fees under C.R.S. § 13-17-201, Check Point fails to meet its burden of establishing the reasonableness of the fees it seeks.  Far from substantiating the reasonableness of its fees, Check Point merely provides the redacted bills from its attorneys.  Check Point's reason for not analyzing the reasonableness of its attorneys' fees is obvious—the rates charged by its attorneys are well above the prevailing rates of this legal community and the legal bills are riddled with duplications. Having failed even to *attempt* to meet its burden, Check Point cannot be allowed to remedy factual shortcomings in a reply brief.  Rather, the Motion must be denied.

## II.    CHECK POINT IS NOT ENTITLED TO FEES UNDER C.R.S. § 13-17-201.

In the Motion, Check Point fails to provide *any* substantive analysis to support the single most critical point with respect to a request for an award of attorneys' fees pursuant to C.R.S. § 13-17-201—namely that zvelo's asserted claims in this action are torts.  The absence of any

analysis by Check Point is hardly surprising given that zvelo's claims do *not* constitute tort claims for purposes of C.R.S § 13-17-20.  Accordingly, the Motion must be denied.

     **A.**    **Legal Standard.**

     Under C.R.S. § 13-17-201, a defendant who succeeds on a motion to dismiss under C.R.C.P. 12(b) in a ***tort action*** "brought as a result of a death or an injury to person or property" must be awarded reasonable attorney fees incurred in defending the action.   When an action mixes tort and non-tort claims, C.R.S. § 13-17-201 applies only if the dismissed action "sounded predominantly in tort."  *Dinnen v. Kneen*, No. 16-cv-00992-PAB-STV, at *3 (D. Colo. 2018) (quoting *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 n.6 (10th Cir. 2000)); *see also Shell v. Henderson*, No. 09–cv–00309–MSK–KMT, 2013 WL 4838907, at *2 (D. Colo. Sept. 10, 2013) (citing *Dubray v. Intertribal Bison Co–Op*, 192 P.3d 604, 607 (Colo. App. 2008)).  Under the predominance test, a court first "should focus on the manner in which claims are pleaded." *Dubray*, 192 P.3d at 607.  Then the court should "tally" tort and non-tort claims asserted, or, if that is not dispositive, decide what the "essence of the action" is.  *Shell*, 2013 WL 4838907, at *2 (discussing *Dubray*); *Castro v. Lintz*, 338 P.3d 1063, 1069–70 (Colo. App. 2014) (holding that, where a plaintiff brought one tort and one non-tort claim, the "essence" of the plaintiff's action "was not one sounding in tort, because the overall thrust and purpose of his claims—even the one claim arguably sounding in tort—was … not to obtain additional tort remedies").

     **B.**    **zvelo's Action Does Not Sound "Predominantly In Tort," And Therefore Check Point Is Not Entitled To An Award Of Fees Under C.R.S. § 13-17-201.**

     The Motion is bereft of any substantive analysis that supports Check Point's bald assertion that zvelo's claims are torts for purposes of section 13-17-201.  Instead, Check Point merely summarily concludes that "zvelo's trade secret claims are tort claims."  Mot. 4.  Even worse, Check

Point contends, without support or analysis, that zvelo's claim for unjust enrichment is a tort because it was preempted by zvelo's statutory trade secret claims. *Id*. at 5. As zvelo will show, utilizing the analytical framework previously adopted by this Court as well as this Court's prior binding precedents confirms that zvelo's claims *do not* constitute torts for purposes of C.R.S. § 13-17-201.

      1.      **zvelo's claim for misappropriation under the Federal Defend Trade Secrets Act is not a tort for purposes of C.R.S. § 13-17-201.**

This Court has held that a federal statutory claim should be considered a tort for purposes of section 13-17-201 only if the relevant statute's "purpose and remedial scheme are tort-like." *Shell*, 2013 WL 4838907, at *4 (relying on *Coats v. Dish Network, Inc.*, 303 P.3d 147, 153 (Colo. App. 2013)). Under the Court's holding in *Shell*, a claim for misappropriation under the DTSA is not a tort for purposes of C.R.S. § 13-17-201.

      a.      **The purpose and remedial scheme of the DTSA are not tort-like.**

Considering the federal Copyright Act, the *Shell* court held that the Act's purpose is not tort-like because it is not primarily directed at providing a remedy to individuals but rather "reflects a careful balancing of personal economic interest in creative works against the public interest in making derivative and other permissible uses of such works." *Shell*, 2013 WL 4838907, at *4. As for the remedial scheme it provides, the Court distinguished the Copyright Act from tort claims because it "limits the remedies available to a plaintiff, precluding the type of non-economic damages awardable for on [sic] tort claims," such as those for pain and suffering, emotional distress, harm to reputation, and other "make-whole remedies." *Id*. at *3–4 (citing *Coats*, 303 P.3d

at 153).  Based on the foregoing analysis, the *Shell* court denied a request for attorney fees pursuant to C.R.S. § 13-17-201.[1]

Applying this Court's reasoning in *Shell* to a claim under the Defend Trade Secrets Act ("DTSA") confirms that Check Point is not entitled to an award of attorneys' fees.  Unlike the Copyright Act, the DTSA lacks a stated legislative purpose.  *See generally* 18 U.S.C. § 1831–1839.  However, an examination of its provisions confirms that the DTSA does not operate as a tort-like remedy.  Specifically, while the DTSA provides a civil cause of action, it also includes provisions criminalizing economic espionage (section 1831) and theft of trade secrets (section 1832).  Thus, like the Copyright Act, the DTSA protects private interests as well as the broader public interest.  Further, like the Copyright Act, the remedial scheme set forth under the DTSA is decidedly not tort-like.  The DTSA limits remedies to injunctive relief or damages for actual loss, unjust enrichment, or an amount equivalent to a reasonable royalty for use of the trade secret.  18 U.S.C. § 1836(b)(3)(B).  Exemplary damages are only available under limited circumstances—specifically willful and malicious misappropriation.  18 U.S.C. § 1836(b)(3)(C).  Accordingly, under this Court's reasoning in *Shell*, a claim for misappropriation under the DTSA is not a tort for purposes of a claim for attorneys' fees under C.R.S. § 13-17-201.

b.       **Section 13-17-201 is preempted by the DTSA.**

As further grounds for refusing to award attorneys' fees under C.R.S. § 13-17-201 for a claim of infringement under the Copyright Act, the *Shell* court concluded that C.R.S. § 13-17-201 was preempted by the Copyright Act's provision for attorney's fees.  2013 WL 4838907, at *4.

---

[1] In contrast, in *Building on Our Best*, the District of Colorado found that the Colorado Consumer Protection Act was tort-like because its legislative purpose was to provide consumers remedies for fraud.  2016 WL 1756488, at *3.

Specifically, this Court concluded that the mandatory nature of an award of fees pursuant to section 13-17-201 was contradicted by the provision in the Copyright Act allowing for a *discretionary* award of fees.  *Id.*  In support of its analysis, *Shell* relied on *State v. Golden's Concrete Co.*, in which the Colorado Supreme Court decided that section 13-17-201 was preempted in an action brought under 42 U.S.C. § 1983, which only permits the recovery of attorney fees in "limited circumstances."  962 P.2d 919, 926 (Colo. 1998).  "Since section 13-17-201 *mandate*s the award of attorney fees to a prevailing defendant, while 42 U.S.C. 1988 *permits* an award of attorney fees to a prevailing defendant in limited circumstances, the Colorado statute conflicts with federal law." *Golden's Concrete*, 962 P.2d at 926 (emphasis added).  The Colorado Supreme Court took note in *Golden's Concrete* that, under the doctrine of preemption, a state statute that conflicts with federal law is void, and therefore it held that section 13-17-201 was preempted in that case.  *Id.*[2]

Like the Copyright Act, the DTSA preempts C.R.S. § 13-17-201, and the Court should find so in this action.  The DTSA addresses attorney fees in 18 U.S.C. § 1836(b)(3)(D), which *permits*—but does not *require*—a court to award attorney fees to a prevailing party in limited circumstances, specifically for claims of misappropriation made in bad faith or for willful and malicious misappropriation.  *See* 18 U.S.C. § 1836(b)(3)(D).  Thus, like the federal statutes at issue in *Shell* and *Golden's Concrete*, the DTSA's fees provision is discretionary, not mandatory, placing it in conflict with C.R.S. § 13-17-201.  Therefore, under *Shell* and *Golden's Concrete*, the DTSA's fees provision preempts section 13-17-201.  Further, a finding that the DTSA preempts

---

[2] In contrast, in *Advanced Career Techs., Inc. v. John Does 1-10*, the District of Colorado, faced with a conflict between section 13-17-201 and the federal Lanham Act, determined that the state law was not preempted. 100 F.Supp.3d 1105, 1109 (D. Colo. 2015). However, the Court's holding applied narrowly to the Lanham Act, which the Court, relying on case law from the First Circuit, interpreted as not preempting a more generous fee provision at the state level. *Id.* (citing *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 41–42 (1st Cir. 2006)).

Colorado law would be supported by generally accepted rules of preemption, as the Colorado Supreme Court noted in *Golden's Concrete*. Therefore, the Court should hold that the fees provision of the DTSA, and not C.R.S. § 13-17-201, controls in this action. Since Check Point has not sought fees under the DTSA or alleged that zvelo brought its claim for misappropriation in bad faith, its request for attorneys' fees must be denied.

c.    <b>Check Point's reliance on <i>Gognat</i> and <i>Genentech</i> is misplaced.</b>

In the Motion, Check Point fails to address the Court's decision in *Shell* or any other case that analyzed the applicability of C.R.S. § 13-17-201 to a claim for misappropriation under the DTSA. Instead, Check Point's entire demand for fees relies on two easily distinguishable cases. Mot. 4.

Contrary to Check Point's citation in the Motion, the Colorado Court of Appeals did *not* note in *Gognat* "that Section 13-17-201 is applicable to a case where trade secret claims are dismissed because allegations of misappropriation of trade secrets implicate 'alleged tortious conduct'." Mot. 3 (citing *Gognat v. Ellsworth*, 224 P.3d 1039, 1053 (Colo. App. 2009)). In fact, in the page cited by Check Point, the court did not address C.R.S. § 13-17-201 *at all*. *Id.* Rather, the court's analysis *expressly* addressed C.R.S. § 13-1-124(1)(b)—Colorado's long-arm statute—and focused exclusively on reviewing the location that "any alleged tortious conduct" occurred for purposes of establishing jurisdiction. *Id.* Accordingly, the court's decision in *Gognat* offers no analytical support for the proposition that a claim under the DTSA "sounds predominantly in tort" for purposes of a claim for fees under C.R.S. § 13-17-201.

Check Point's reliance on *Genentech, Inc. v. JHL Biotech* is equally misplaced. The court in *Genentech* did not consider whether the claims were torts for purposes of C.R.S. § 13-17-201

because fees were not at issue in the case.  *See generally Genentech*, No. C 18-06582 WHA, 2019 WL 1045911 (N.D. Calif. March 5, 2019).  Even if the California court had been presented a request for fees, the case did not arise under Colorado law and therefore offers no analytical support regarding the applicability of C.R.S. § 13-17-201.  Accordingly the decision has no relevance to the present Motion.

  2. **zvelo's claim for misappropriation under the Colorado Uniform Trade Secrets is not a tort for purposes of C.R.S. § 13-17-201.**

  As with the DTSA, the Colorado Uniform Trade Secrets Act ("CUTSA") is not tort-like in purpose or scheme.  Its "general purpose," borrowed from the Uniform Trade Secrets Act, is "to make uniform the law with respect to the subject of this article among states enacting it."  C.R.S. § 7-74-109.  It provides only for injunctive relief; damages for actual loss, unjust enrichment, or the equivalent of a reasonable royalty; and exemplary damages for fraudulent, malicious, or willful and wanton misappropriation.  C.R.S. § 7-74-103; C.R.S. § 7-74-104.  Accordingly, under this Court's reasoning in *Shell*, zvelo's claim for misappropriation under CUTSA is not sufficiently tort-like for purposes of a claim for fees under C.R.S. § 13-17-201.

  Further, while CUTSA cannot be said to preempt C.R.S. § 13-17-201 since both are state statutes, the two do conflict; and in this action CUTSA should control.  "If different statutory provisions cannot be harmonized, the specific provision controls over the general provision." *Beren v. Beren*, 349 P.3d 233, 239 (Colo. 2015) (citing *Telluride Resort and Spa, L.P. v. Colo. Dep't of Revenue*, 40 P.3d 1260, 1265 (Colo. 2002) (holding that a narrow exception in the tax code applied more specifically to the action and was more "consistent with the General Assembly's statutory design and intent").

Here, CUTSA is narrower in reach and touches upon the issues in this case more specifically than C.R.S. § 13-17-201, which applies to a whole host of claims under the broad umbrella of tort. It would be more consistent with legislative intent to allow CUTSA to control where the two statutes conflict. Therefore, the Court should find that CUTSA's fee provision, and not C.R.S. § 13-17-201, controls in this action. Given that Check Point has not sought fees under CUTSA, its request for attorneys' fees must be denied.

3. **Colorado courts have previously determined that unjust enrichment is not a tort for purposes of C.R.S. § 13-17-201.**

The Colorado Court of Appeals held in 2014 that unjust enrichment is not a tort claim for purposes of the "predominance" analysis. *Gagne v. Gagne*, 338 P.3d 1152, 1168 (Colo. App. 2014) (citing *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1010 (Colo. 2008)).

Check Point fails to cite in the Motion any case law to support its proposition that zvelo's unjust enrichment claim is a tort for purposes of establishing the applicability of C.R.S. § 13-17-201. It cites only to the Court's finding in zvelo's action against Akamai Technologies that the unjust enrichment claim was preempted by zvelo's claim under CUTSA. Mot. 5 (citing *zvelo v. Akamai Technologies, Inc.*, No. 19-cv-00097-PAB-SKC, 2019 WL 4751809, at *5 (D. Colo. Sept. 30, 2019). Contrary to Check Point's stray reference, the Court's holding in the *Akamai* case in no way supports a finding that zvelo's claim for unjust enrichment constitutes a tort for purposes of a claim for fees under C.R.S. § 13-17-201.

Even if Check Point had made a substantive argument to support a finding that zvelo's claims for trade secret misappropriation constitute torts for purposes of C.R.S. § 13-17-201—which it did not—Check Point cannot overcome the fact that Colorado courts have previously held

that unjust enrichment is not a tort for purposes of the statute.  Therefore, the Court should find

that zvelo's claim for unjust enrichment is not a tort for purposes of the predominance analysis.

In conclusion, because none of zvelo's claims are torts, this action does not sound

predominantly in tort.  Accordingly, Check Point is not entitled to an award of its attorneys' fees

pursuant to C.R.S. § 13-17-201.  The Motion must be denied.

### C. Check Point fails To Offer Any Evidence That zvelo Asserted Trade-Secrets Claims To Obtain Additional Remedies Only Available Under Tort Law.

Although Check Point fails to make this argument in the Motion—or to address the relevant

case law—zvelo notes that, in addition to the predominance analysis, some Colorado courts

consider whether a plaintiff added a tort claim in order to obtain additional remedies available in

tort law for purposes of a fees analysis pursuant to C.R.S. § 13-17-201.  *See Castro*, 338 P.3d at

1069–70; *Dubray*, 192 P.3d at 607; *Gagne*, 338 P.3d at 1168 (finding that section 13-17-201 did

not apply where torts did not predominate and defendant presented no evidence that plaintiff

brought tort claims to seek additional remedies).  Even if Check Point had made this argument in

the Motion –which it did not—the Motion should still be denied.

Here, zvelo did not bring its trade-secret claims to access additional tort remedies, since

the DTSA and CUTSA substantially limit the types of remedies available to plaintiffs and do not

offer others available in common-law tort actions.  Furthermore, like in *Gagne*, Check Point has

not presented evidence to support such a finding.  Therefore, the essence of zvelo's action does

not lie in tort, and C.R.S. § 13-17-201 does not apply to zvelo's claims under this analysis either.

### III. THE AMOUNT OF FEES REQUESTED BY CHECK POINT IS UNREASONABLE UNDER COLORADO LAW.

If the Court decides that, notwithstanding zvelo's analysis, C.R.S. § 13-17-201 applies to

this case, Check Point is still not entitled to the fees it seeks because the amount is unreasonable.

**A.       Legal Standard.**

"To determine the reasonableness of a fee request, a court must begin by calculating the 'lodestar amount,' which represents the number of hours reasonably expended multiplied by a reasonable hourly rate." *Nero v. American Family Mut. Ins. Co.*, No. 11–CV–02717–PAB–MJW, 2013 WL 5323191, at *8 (D. Colo. Sept. 23, 2013); *Broker's Choice of America, Inc. v. NBC Universal, Inc.*, No. 09–cv–00717–CMA–BNB, 2011 WL 3568165, at *2 (D. Colo. Aug. 15, 2011). "The party seeking the award has the burden of persuading the court that the hours expended and the hourly rate are both reasonable." *Broker's Choice*, 2011 WL 3568165, at *2. "The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet 'the burden of establishing entitlement to an award.'" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

**B.       Check Point Fails Its Burden Of Demonstrating That The Hours And Hourly Rates Billed Are Reasonable.**

In the Motion, Check Point fails to offer any evidence as to the reasonableness of its fee demand.  Rather, Check Point only provides redacted versions of its bills and its own, unsupported opinion that they are reasonable.  Even if it had produced more, the rates charged by Check Point's counsel are unreasonable by community standards and the duplicative nature of many of the hours billed renders them unreasonable as well.

       1.       **Check Point fails to offer any evidence to support the reasonableness of its attorneys' hourly rates.**

"A 'reasonable rate' is defined as the prevailing market rate in the relevant community for an attorney of similar experience." *Nero*, 2013 WL 5323191, at *9.  The party requesting the fees bears the burden of showing "'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and

reputation.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  In *Nero*, the District of Colorado held that the fact that an attorney regularly charges at the rate set forth in a fee request is relevant, but not dispositive.  *Nero*,  2013 WL 5323191, at *9.  Because the  party requesting fees did not present evidence that its attorneys' rates were consistent with the rates charged by other attorneys of similar experience in the Denver area, this Court adjusted the rate "based on its own familiarity of the range of prevailing rates in the Denver market."  *Id.*  (citing *Guides Ltd. v. Yarmouth Group Property Mgmt., Inc.*, 295 F.3d 1065, 1079 (10th Cir. 2002)).

Check Point conspicuously fails to provide evidence that the rates charged by its attorneys are comparable with the market rate in Denver (or any other market).  For that reason alone, this Court should reject the reasonableness of the fees Check Point seeks to recover.  Check Point's local counsel at least sets forth her opinion that the local attorneys' rates are comparable with those of similar experience in the community, but she does not provide any evidence to support that opinion.  Mot., Ex. A at ¶ 8.  Check Point's DLA Piper attorneys do not even go that far.  *Id.*, Ex. B at ¶ 13.  The fact that Check Point's attorneys normally charge rates of $875, $780, $865, $695, $1015, and $825, respectively, is not enough alone under *Nero* to demonstrate reasonableness.  *Id.*, Ex. B at ¶¶ 3–7.  DLA Piper's paralegal fees, at a rate of $260 per hour, are also unreasonable.[3] Application of appropriate market rates would reduce the fee award that Check Point is seeking dramatically—likely in excess of 40%.[4]

---

[3] The District of Colorado decided in 2015 that $90.00 an hour was the average paralegal rate in Denver.  *O'Brien v. Airport Concessions, Inc.*, No. 13–cv–01700–CMA–BNB, 2015 WL 232191, at *3 (D. Colo. Jan. 16, 2015).

[4] This Court determined that $500.00 was the prevailing rate for a lead attorney in an action like the one before it, "which require[d] knowledge of commercial litigation and class action claims."  *Nero*, 2013 WL 5323191, at *9.  The Court did not adjust the rates requested by the remaining attorneys, which were $395.00–$420.00, $370.00, $310.00, and $240.00, respectively.  *Id.* at *8–9.

2.  **Check Point fails to demonstrate the reasonableness of the hours billed by its attorneys**.

To determine the reasonableness of the number of hours billed by an attorney requesting fees, a court considers several factors, including whether the tasks would ordinarily be billed to a client, the complexity of the case, the strategies pursued, the responses to the opposing party, and duplication of efforts. *Nero*, 2013 WL 5323191, at *10 (quoting *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983), *overruled on other grounds by Penn v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 717 n.4 (1987)). In *Nero*, this Court found that some efforts were duplicated by multiple attorneys and reduced the hours billed accordingly. *Id.* at *11–*12. In *O'Brien*, the court found "substantial similarities" between the pleadings and previous filings by the plaintiff's attorney, for which it reduced the number of hours billed by more than one third. 2015 WL 232191, at *4. The *O'Brien* court also disapproved of an associate and a partner working on the same draft without more explanation. *Id.* at *5.

Here, Check Point filed a motion to dismiss, conducted written discovery, participated in judicial conferences, and drafted a motion for sanctions pursuant to Rule 11, which was served on zvelo's counsel but never filed. Mot. at 7. As the foregoing summary makes clear, the case was not highly complex and minimal "strategies" were pursued. Further, DLA Piper had multiple attorneys working on the same documents. *See* Pl.'s Ex. 1. In view of the limited work actually conducted by Check Point's counsel, the fact that Check Point is seeking to recover for over *500 hours*[5] of work split across at least *8 timekeepers* is simply not reasonable.

Further, Check Point fails to demonstrate that its counsel appropriately split time entries

---

[5] Check Point conspicuously did not provide any totals for hours worked in the Motion.

between this action and the parallel action involving Akamai.  Check Point has included multiple time entries in its bills representing work done on "motions to dismiss," which were not included in the invoices submitted by Akamai as part of its motion for sanctions.  *Compare* Def.'s Ex. B-1, at 3, *with* Dkt 52, Ex. C-3.  These time entries, by attorney Christopher B. Donovan, represent about one quarter of the time billed to Check Point for the motion to dismiss, and yet Mr. Donovan billed no time to client Akamai for work on motions that were nearly identical with the exception of Check Point's personal jurisdiction argument.  Check Point had the burden of demonstrating that all of the attorney time for which it is seeking compensation was incurred *working on this case* and yet fails even to *acknowledge* the work performed by its counsel on behalf of Akamai let alone offer this Court assurance that the time was appropriately allocated between the two parties.  The Court must not award Check Point fees for work done for a client that is not a party to this action.

3.    **The Court should further reduce the total lodestar amount.**

After calculating the appropriate hourly rates and appropriate number of hours billed, a court still has discretion to adjust the amount of the fees award.  *S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v. Weinstein*, 343 P.3d 1044, 1049 (Colo. App. 2014).  "The lodestar amount may be adjusted based upon several factors, including the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, awards in similar cases, and the degree of success achieved.  *Nero*, 2013 WL 5323191, at *8 (citing *Tallitsch v. Child Support Servs., Inc.*, 926 P.2d 143, 147 (Colo. App. 1996)).

Here, as previously discussed, the case is not highly complex.  Further, the value of the legal services to the client and the degree of success achieved—a dismissal without prejudice,

meaning zvelo is free to file this action in a court with personal jurisdiction over Check Point—do not justify a combined $325,072.23 in fees.  Check Point also included in its exhibits the $216.00 cost to register its lead attorney in the District of Colorado, which it already sought in its Proposed Bill of Costs.  Def.'s Ex. B-1 at 5; Dkt 57.  Therefore, the Court should further reduce the lodestar.

The case law is clear.  Check Point had the burden of establishing the reasonableness of the fees charged by its attorneys and failed to do so.  Furthermore, this Court should not allow Check Point to remedy its failings in a reply brief.  *See Hill v. Kemp*, 478 F.3d 1236, 1250 (10th Cir. 2007) (holding that a party waives arguments first raised in a reply).  Instead, the Court should reject Check Point's request for attorney fees.

## IV.    CONCLUSION.

In conclusion, Check Point should not be awarded attorney fees pursuant to C.R.S. § 13-17-201, because the statute does not apply to this action.  Even were the Court to accept Check Point's argument that the statute applies here, it should not award the full amount requested by Check Point, because the amount is unreasonable.

Respectfully submitted this 1st day of November, 2019.

KUTAK ROCK LLP

*s/ Chad T. Nitta*
Chad T. Nitta
Elizabeth J. Field
1801 California St., Suite 3000
Denver, CO 80202
Tel: 303-297-2400
chad.nitta@kutakrock.com
elizabeth.field@kutakrock.com

*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of November, 2019, I electronically filed the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO CHECK POINT SOFTWARE TECHNOLOGIES, LTD'S MOTION FOR ATTORNEYS' FEES** with the Clerk of Court using the CM/ECF system which will send notification of such filing to following e-mail addresses:

Kathryn A. Reilly
Melissa L. Romero
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Tel: 303-244-1800
reilly@wtotrial.com
romero@wtotrial.com
*Attorneys for Defendant*

Allissa A. R. Pollard
Christopher B. Donovan
DLA Piper LLP (US)
1000 Louisiana St., Suite 2800
Houston, TX 77002
Tel: 713-425-8400
Allissa.pollard@dlapiper.com
Christopher.b.donovan@dlapiper.com
*Attorneys for Defendant*

Michael G. Strapp
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110
Tel: 617-406-6031
michael.strapp@dlapiper.com
*Attorneys for Defendant*

*s/ Chad T. Nitta*